**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DAVID L.J., | |
| *Plaintiff,* | |
| v. | Case No. 1:25-cv-01399 |
| FRANK BISIGNANO, Commissioner of the Social Security Administration, | Hon. Beth W. Jantz |
| *Defendant.* | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff David L.J.[1] brings this action under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). *See* Dkt. 1. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). *See* Dkt. 7. For the reasons stated below, Plaintiff's Motion for Summary Judgment (Dkt. 15) is GRANTED, and the Commissioner's Motion for Summary Judgment (Dkt. 18) is DENIED. The Commissioner's decision is reversed, and the case is remanded to the Social Security Administration for further proceedings consistent with this memorandum opinion and order.

**BACKGROUND**

Plaintiff applied for DIB and SSI on October 27, 2021, alleging that she became disabled on January 15, 2020. *See* Certified Admin. Record (R.) 249, 265 (Dkt. 11-1). The Social Security

---

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by her first name and the first initial of her last name. This case was filed under the name David, but Plaintiff represents that she is transgender and goes by the name Sophia, and her brief uses she/her pronouns throughout. Dkt. 15 at 1. The Court will hereafter refer to Plaintiff the same way in this memorandum opinion and order.

Administration denied Plaintiff's claims initially on April 25, 2022, and upon reconsideration on August 26, 2022. R. 150–57, 170–78.

At Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on June 22, 2023. *See* R. 53–95. The ALJ denied Plaintiff's claim in a written opinion dated January 30, 2024. *See* R. 35–48. The ALJ applied the five-step analytical process required by 20 C.F.R. § 404.1520. At Step 1, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since January 15, 2020. R. 38. At Step 2, the ALJ concluded that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine, generalized anxiety disorder, depressive disorder, and attention-deficit hyperactivity disorder, and the non-severe impairments of history of skin grafts and extensive scarring on the back, obesity, and endocrine disorder. R. 38. The ALJ also acknowledged that Plaintiff had been diagnosed with neuropathy, but concluded it was not a medically determinable impairment because the record contained no evidence of it from an acceptable medical source. R. 38–39. At Step 3, the ALJ determined that Plaintiff's impairments, alone or in combination, did not meet or medically equal one of the Social Security Administration's Listings of Impairments. *See* R. 39–40.

Before Step 4, the ALJ assessed that Plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following limitations:

> [S]he is limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling. The claimant must also avoid working at extreme temperatures or vibrations, and must avoid working with hazardous unprotected heights and dangerous moving machinery. Additionally, she can understand, remember, and carry out simple work instructions, and is able to sustain the necessary attention and concentration in two hour increments throughout the day to sustain simple job duties assuming typical workday breaks. The claimant can also make simple work-related decisions. Further, she can respond appropriately to supervisors, and should work only on a brief, occasional and superficial basis with co-workers, which would exclude team or tandem work tasks. The claimant also cannot engage in customer

2

service work with the general public and can have no interaction with the general public as a part of work tasks. In addition, she should work in a routine work setting and can deal occasional changes. The claimant also should not perform fast-paced production work or work with strict production or hourly quotas, and should work in a job that allows for end of day goals.

R. 41; *see* R. 41–46. At Steps 4 and 5, the ALJ concluded that Plaintiff could not perform her past work as a cashier, but that she was capable of performing the functions of hotel housekeeper, of which there were 200,000 jobs in the national economy; mail clerk, of which there were 13,000 jobs; and sorter, of which there were 115,000 jobs. R. 46–48. Based on these findings, the ALJ concluded that Plaintiff was not disabled during the relevant period. R. 48.

On December 6, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner, reviewable by the District Court under 42 U.S.C. § 405(g). *See* R. 1–4; *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

**STANDARD OF REVIEW**

The Court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence. *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024). Substantial evidence "'means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019)). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014). While reviewing the Commissioner's decision, the Court "'will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it.'" *Warnell*, 97 F.4th at 1052–53 (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). On the other hand, the Court cannot let the Commissioner's decision stand if it lacks sufficient evidentiary support, an adequate discussion of the issues, or is

undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also* 42 U.S.C. § 405(g).

## DISCUSSION

Plaintiff argues that the ALJ's decision to reject the opinion of Michael Stone, Psy.D., when assessing her RFC was not supported by substantial evidence; that the jobs the ALJ identified at Step 5 exceeded Plaintiff's RFC; and that the ALJ did not properly evaluate Plaintiff's subjective complaints of pain. *See* Dkt. 15 at 3–13. The Court agrees with Plaintiff's first argument and will remand on that basis. This opinion accordingly does not address Plaintiff's other arguments.

For claims filed after March 17, 2017, like this one, the Social Security Administration's regulations require ALJs to "articulate in [their] determination or decision how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings in [the claim-ant's] case record." 20 C.F.R. § 404.1520c(b). The "most important factors" an ALJ must consider are supportability and consistency. *Id.* § 404.1520c(b)(2). Supportability means: "The more rele-vant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). Consistency means: "The more consistent a medical opinion(s) or prior admin-istrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

When assessing Plaintiff's RFC, the ALJ considered the opinion of Dr. Stone, a consultative psychological examiner who examined Plaintiff on April 12, 2022, at the Social Security Administration's behest. *See* R. 45, 384–89. According to the ALJ, Dr. Stone:

> opined that the claimant has a fair ability to relate to others, a poor ability to understand, remember and follow simple instructions, as well as a poor ability to maintain the attention required to perform simple, repetitive tasks and sustained concentration, persistence, and pace. Dr. Stone also found the claimant's ability and adaptive capacity to withstand the stress and pressures of day-to-day work activity was poor, and that she would be unable to manage benefit [*sic*] on her own behalf if awarded.

R. 45 (citing R. 388–89). The ALJ found that this opinion was supported by "Dr. Stone's own examination findings showing the claimant to be cooperative and somewhat fidgety with adequate eye contact, problems with attention and concentration, difficulty sitting still, appropriate behavior, full orientation, unremarkable mood, affect within normal limits, normal thought content, intact thought process, coherent and relevant speech, poor overall memory, impaired judgment, and an impairment in abstract thinking relative to interpreting proverbs." R. 45 (citing R. 387–88). "However," the ALJ reasoned, Dr. Stone's opinion was "inconsistent with the claimant's presentation elsewhere including a mini mental status exam performed during a consultative examination on April 13, 2022." R. 45 (citing R. 392). "As such," the ALJ continued, "Dr. Stone's opinion is found to be not persuasive." R. 45.

The manner in which the ALJ assessed Dr. Stone's opinion was a reversible error. The applicable regulation "required the ALJ to explain *how* [Dr. Stone's] opinion was inconsistent with and/or unsupported by the record." *Patrice W. v. Kijakazi*, No. 20-cv-02847, 2022 WL 2463557, at *4 (N.D. Ill. July 6, 2022) (citing 20 C.F.R. § 404.1520c(b)(2)). The ALJ reasonably analyzed the supportability of Dr. Stone's opinion, but she "provided only a rote conclusion with respect to the . . . consistency of Dr. [Stone's] opinions with the broader record. This alone warrants remand." *Id.*; *see also Jeffrey M. v. Bisignano*, No. 25-cv-02353, 2025 WL 3470605, at *3 (N.D. Ill.

5

Dec. 3, 2025) ("The ALJ's failure to address the consistency factor requires that this matter be remanded."); *Lauren May H. v. Bisignano*, No. 23-cv-02165, 2025 WL 3210421, at *9 (N.D. Ill. Nov. 17, 2025) (same, and collecting cases).

In response, the Commissioner contends that the ALJ's disregard of Dr. Stone's opinion as "inconsistent with the claimant's presentation elsewhere" in the record was proper under 20 C.F.R. § 404.1520c(c)(2). *See* Dkt. 18 at 7–8. That regulation instructs ALJs to compare a medical opinion "with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). The problem is that the ALJ did not analyze any other evidence. She merely said that Dr. Stone's opinion was "inconsistent" with the rest of the record generally. R. 45. Labeling an examining consultant's opinions as "inconsistent with 'the record as a whole'" is "unexplained and perfunctory." *Patrice W.*, 2022 WL 2463557, at *4. That is especially true here, where other evidence in the record is actually *consistent* with Dr. Stone's opinion. For example, notes from Caleb Reyes, M.D., show that Plaintiff appeared at a May 22, 2023 medication management appointment with avoidant eye contact, constricted and mood-congruent affect, depressed and anxious mood, and thought content positive for depressive cognitions, passive suicidal ideations, ruminations and phobias. *See* R. 562–63. Another example: notes from several office visits with Adam Liparoto, N.P., also "consistently show positive anxiety and depression screenings." R. 46 (citing R. 373, 378–79, 406). The ALJ addressed none of this when evaluating Dr. Stone's opinion for consistency.

The Commissioner also argues that the ALJ's reliance on and reference to the April 13, 2022 mini mental status examination findings of Liana G. Palacci, D.O., was reasonable because Dr. Palacci's findings "directly contradict" Dr. Stone's "most significant findings." Dkt. 18 at 7. The Commissioner argues that the ALJ "placed particular emphasis on [that] fact . . . because the

6

two examinations *occurred on consecutive days*." Dkt. 18 at 7 (emphasis in original). But the ALJ did not mention the timeline of the two examinations at all. *See* R. 45. And even if she had, it is not clear why that matters. Dr. Stone is a mental health specialist, and he developed his opinion during a comprehensive hour-long mental status examination. *See* R. 384–89. In contrast, the mini mental status examination was performed by Dr. Palacci, a doctor of osteopathic medicine, during an internal medicine consultative examination. *See* R. 390–95. In other words, the mini examination was a brief mental status screening conducted by a non-specialist during an appointment focused on assessing physical capabilities or limitations. This is not a sufficient basis to disregard Dr. Stone's opinion, at least not without a fulsome explanation from the ALJ. *See, e.g.*, *Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013) (rejecting an ALJ's reliance on the opinion of an internist, who "did not do a full psychological assessment," to reject the opinion of the treating psychologist); 20 C.F.R. § 404.1520c(b)(2) (requiring Social Security adjudicators to "*explain* how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings") (emphasis added). What matters is not how close in time Dr. Stone's and Dr. Palacci's examinations occurred, but rather that Dr. Stone developed his opinion based on a comprehensive examination, and Dr. Palacci developed hers after only a "mini" examination that occurred during an entirely separate health assessment. *See, e.g.*, *id.* at 1100 n.5 (disapproving of the ALJ's decision to credit a consultative examiner's opinion over the treating physician's opinion when "[t]here was no opinion, other than [the treating physician's], that provided a comprehensive view of Bates's depression and bipolar disorder"). As the Seventh Circuit has explained, "a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). If the ALJ believed that Dr. Palacci's opinion captured

Plaintiff's overall mental condition better than Dr. Stone's, she was obligated to explain why. *See Patrice W.*, 2022 WL 2463557, at *4 ("It was error for the ALJ to rely on a single appointment during which Plaintiff had a more normal presentation to conclude that Dr. Dolan overstated Plaintiff's limitations.").

## CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Summary Judgment (Dkt. 15) is GRANTED, and the Commissioner's Motion for Summary Judgment (Dkt. 18) is DENIED. The Commissioner's decision is reversed, and the case is remanded to the Social Security Administration for further proceedings consistent with this memorandum opinion and order.


SO ORDERED.


DATED: March 24, 2026

HON. BETH W. JANTZ
U.S. Magistrate Judge

8